UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CARL A. RALSTON,
   Plaintiff,

vs.                                     No. 07-3052

NEIL WILLIAMSON, et.al.,
   Defendants

## SUMMARY JUDGEMENT ORDER

This cause is before the court for consideration of the defendants' motion for summary judgment and amended motion for summary judgement. [d/e 43, 56].

### I. BACKGROUND

The pro se plaintiff filed this lawsuit pursuant to 42 U.S.C. §1983 against five defendants at the Sangamon County Jail including Sheriff Neil Williamson, Assistant Warden William Strayer, Sargent Greg Glemmons and Placement Officers Vince Fox and John Kirby. *See* March 30, 2007 Text Order. The plaintiff says the defendants violated his constitutional rights when they failed to protect him from an attack by other inmates on January 17, 2007, and failed to provide him medical care for his serious medical condition.

The defendants have now clarified that the plaintiff was a pretrial detainee at the time of the allegations in his complaint.

### II. FACTS

The plaintiff was booked into the Sangamon County Jail on November 25, 2006.

Defendant Neil Williamson says he is the Sheriff of Sangamon County. (Def. Memo, Will. Aff. p. 1) Williamson says at the time of the allegations in the complaint, there were between 300 and 400 inmates in the jail, and it was "impossible for me to personally supervise the administration of the detailed operations of the Sangamon County Jail." (Def. Memo, Will. Aff. p. 1) Therefore, Williamson says the Jail Superintendent and Assistant Jail Superintendent are assigned those duties. Williamson also says he has no medical training, nor does he have specialized training in the classification of inmates for housing. (Def. Memo, Will. Aff. p. 1) Consequently, Williamson says he had no personal involvement with any of the plaintiff's allegations.(Def. Memo, Will. Aff. p. 2).

Defendant Clemmons says he had no role in classifying the plaintiff or deciding his

housing status. (Def. Memo, Clemmons Aff, p. 1).  Defendant Fox says he was a Classification Officer at the Sangamon County Jail.  Nonetheless, Fox says he did not classify or assign the plaintiff to a housing unit.  This was done by Correctional Officer Kirby. (Def. Memo, Fox Aff, p. 1)

John Kirby says he was a Correctional Officer at the Sangamon County Jail and did classify prisoner for the purpose of selecting housing.  Kirby says he used a point classification system that was in the Sheriff's Policy Manual and had been doing classifications for about ten years. (Def. Memo, Kirby Aff, p. 1).  The parties disagree as to whether the plaintiff told Defendant Kirby that he was a confidential informant.  Defendant Kirby says there is no such notation on the plaintiff's classification form. (Def. Memo, Kirby Aff, p. 1-2)

The plaintiff was labeled as high security.  Kirby says based on this result, he believed G block was the best housing alternative for the plaintiff due to its security measures. (Def. Memo, Kirby Aff, p. 2) Kirby says if an inmate informs an officer that he is in danger, the inmate is moved immediately to B segregation block for his own protection.  (Def. Memo, Kirby Aff, p. 2)

Kirby says the plaintiff lived in G Block for approximately two months without incident.  Kirby says he received no oral or written complaints from the plaintiff concerning his housing, nor did anyone else communicate the plaintiff's concerns.  (Def. Memo, Kirby Aff, p. 2-3).  Defendant Fox also says he has no recollection of the plaintiff ever asking to be removed from Cell Block G or stating that he was in danger. (Def. Memo, Fox Aff, p. 1)   Fox says he received no written requests either.

The incident report from the January 17, 2007, fight indicates the plaintiff said it was his turn to have the television remote, so he changed channels.  Inmate Travis told him he was not going to let him have control of the remote.  Travis then struck the plaintiff.  Another inmate, Johnson, also came up and hit the plaintiff.   The plaintiff gave them the remote and they went away.  The officers observed a small laceration under the plaintiff's left eye and a small cut on his elbow.   The officers confirmed the story with other inmates in the areas. (Def Memo, Ex. B).

In his deposition, the plaintiff says he had known the inmate who struck him, Inmate Travis, for about ten years.  (Def. Memo, Plain. Depo, p. 32).  In fact, the plaintiff admits he had no reason to anticipate the fight because, he and Inmate Travis went "back a long way" and had "been friends a long time." (Def Memo, Plain. Depo, p. 39-40).

Lee Ann Braurer says she is the Medical Director at the Sangamon County Jail and oversees medical records for inmates. (Def. Memo, Braurer Aff, p. 1).  The medical records show the plaintiff was brought to the medical unit after the fight in G Block.  The records demonstrate the plaintiff has a small cut to his left eyelid and left elbow.   The wounds were cleaned and treated.  No other injuries to his head were noted,

Fox says he did learn there was a fight in Cell block G involving the plaintiff on January

2

17, 2007, so the plaintiff was moved to Cell Block L.  However, the plaintiff "indicated he felt he was in danger in Cell Block L because he had Latin King enemies there, and he was removed at his request and placed in a high risk cell." (Def. Memo, Fox Aff, p. 2)   The plaintiff remained in a high risk cell from approximately one week and then returned to the general population.  Fox says he is not aware of any other fights involving the plaintiff.

On February 4, 2007, the plaintiff filed out a grievance form stating he was suffering from a concussion and was suffering from weakness and nausea.  The plaintiff had been observed from the control room and did not show any signs of weakness or neurological disorder. (Def. Memo, Braurer Aff, Ex. B,  p. 1).  Jail staff placed the plaintiff on the list to see a doctor.

Defendant Strayer says he was the Assistant Superintendent of the Sangamon County Jail during the relevant time period. (Def. Memo, Strayer Aff, P. 1).  Strayer says he has no medical training.  However, on February 4, 2007, Strayer says he learned that the plaintiff was asking to go to the hospital.  Sangamon County Jail procedures require a referral from a medical physician before an inmate can be transported to the hospital. (Def. Memo, Strayer Aff, P. 1)   The defendants have provided a copy of the Medical Services Contract which states that Dr. Maurer must approve all routine referrals and he will determine the need for all non-emergency hospitalization. (Def. Memo, Med. Ser. Cont, p. 5, 8)

Therefore, Strayer arranged for the plaintiff to see Dr. Maurer on February 7, 2007, but the plaintiff refused the appointment. (Def. Memo, Strayer Aff, P. 1).  Strayer says he still believed the plaintiff should be seen by a doctor, so he ordered that the plaintiff be handcuffed and brought to see the doctor.   The plaintiff still refused to see the doctor, and therefore the doctor could not evaluate his medical condition.  The plaintiff was subsequently returned to his cell. (Def. Memo, Strayer Aff, P. 1).  Strayer says this was the last contact he had with the plaintiff concerning his medical care.

The plaintiff did see Dr. Maurer in April of 2007 and complained of numbness due to a 1996 facial injury.  There was no evidence of trauma or significant head injury. (Def. Memo, Braurer Aff, Ex. B,  p. 1).

Defendants Vince Fox, John Kirby, Gregory Clemmons state that they have no medical training. (Def. Memo, Fox Aff, p. 1); (Def. Memo, Kirby Aff, p. 3); (Def. Memo, Clemmons Aff, p. 1).

### III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c.  Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

IV. ANALYSIS

A. FAILURE TO PROTECT

The defendants argue that the plaintiff cannot demonstrate that they failed to protect him in violation of the constitution. The court first notes that the plaintiff has failed to show that most of the defendants had any involvement in this claim. A defendant cannot be held liable under 42 USC §1983 unless the plaintiff can demonstrate that the defendant's caused or participated in the alleged constitutional violation. *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982). Also, the mere fact that an individual was a supervisor is insufficient to establish liability because the doctrine of *respondeat superior* (supervisor liability) does not apply to actions filed under 42 USC §1983. *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). A supervisor cannot be held liable for the errors of his subordinates.

Most of the defendants say they had no personal involvement with the plaintiff regarding his housing and received no information that he was in fear for his safety. For instance, Sheriff Williamson says he did not handle the daily supervision of the jail, did not classify prisoners for incarceration and had no personal knowledge for the plaintiff's claims. The plaintiff maintains that there still is a factual dispute, because the Sheriff did not follow his own policy to provide a safe environment, and failed to investigate his claims. (Plain. Resp, p. 3,

6, 8) The plaintiff had not articulated an official capacity claim based on this single incident and does not allege that the Sheriff had an knowledge of his safety concerns prior to the attack. The plaintiff has therefore failed to show how this defendant is liable for his claims.

The only defendant the plaintiff claims he told that he feared for his safety is Defendant Kirby. "Because officials have taken away virtually all of a prisoner's ability to protect himself, the Constitution imposes on officials the duty to protect those in their charge from harm from other prisoners." *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001). However, to succeed, the plaintiff must show that a "substantial risk of serious harm" existed and that the guard subjectively disregarded that risk." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). Liability attaches when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

The plaintiff says he told Defendant Kirby that he "was a confidential source for the Illinois State Police-D.C.I. and I might have enemies here." (Plain. Resp., p. 2) Defendant Kirby says he has no memory of the plaintiff making this statement and claims if he had, the information would be on his classification form. (Def. Memo, Kirby Aff, p. 1).

Nonetheless, even if the plaintiff did share this information with Defendant Kirby, the plaintiff has failed to show that this defendant knew there was an excessive risk of harm to the plaintiff from the inmates who struck the plaintiff. The plaintiff had been housed in G block for two months with these same individuals and has provided no evidence that he had any previous problems or complained that he felt threatened by these individuals. Most importantly, the plaintiff himself admits he did not anticipate a problem because he and Inmate Travis went "back a long way" and had "been friends a long time." (Def Memo, Plain. Depo, p. 39-40). If the plaintiff did not anticipate a problem, there is certainly no evidence the defendants would have been aware that he was at risk. Finally, the plaintiff claimed he was at risk because he was a confidential informant. By the plaintiff's own version of events, the assault had nothing to do with his status as an informant and was an unexpected event. The motion for summary judgement on this claim is granted.

B. DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL CONDITION

The defendants argue there is no evidence they were deliberately indifferent to the plaintiff's serious medical condition. Because the plaintiff was a pretrial detainee, his §1983 claim falls under the Fourteenth Amendment's Due Process Clause rather than under the Eighth Amendment. *Butera v. Cottey,* 285 F.3d 6901, 605 (7th Cir. 2002). Nonetheless, the claim is still "analyzed under the Eighth Amendment test." *Henderson v. Sheahan,* 196 F.3d 839, 844 n.2 (7th Cir. 1999) Therefore, the plaintiff must pass both an objective and a subjective test in order to establish that the defendants violated her constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337,

346 (1981); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). The first prong of the test requires the plaintiff to demonstrate that the alleged deprivation was sufficiently serious. *Id*.

The second prong of the test requires the plaintiff to show that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42)  In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997).

[P]roof of deliberate indifference may be found where a prison official intentionally denies or delays access to medical care or intentionally interferes with the treatment once prescribed." *Jones v. Natesha* ,151 F.Supp.2d 938, 945 (N.D. Ill.  2001) *citing Ford,* 2001 WL 456427 at 6.   However, "an inmate who complains that delay in medical treatment rose to constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

The plaintiff has again failed to show how most of these defendants are liable for his claims particularly since they are all non-medical staff and the plaintiff did receive care immediately after the assault.  *Greeno v Daley,* 414 F.3d 645, 656 (7th cir. 2005)("If a prisoner is under the care of medical experts...a non-medical prison official will generally be justified in believing the plaintiff is in capable hands.")

In his response, the plaintiff argues that Defendant Strayer was deliberately indifferent when he refused to allow the plaintiff to go to an outside hospital for a brain scan.  The plaintiff's claim fails.  First, the plaintiff is not entitled to specific care.  Second, Defendant Strayer did try to provide additional medical care for the plaintiff, it was the plaintiff who refused to be examined. Finally, there is no evidence before the court that the plaintiff suffered from a serious, on-going injury after the incident.   The motion for summary judgement is granted.

**IT IS THEREFORE ORDERED that:**

1. **The defendants' motions for summary judgment are granted.  [d/e 43, 56].  The Clerk of the Court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56.  This case is terminated, with the parties to bear their own costs.**

2. **If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  See Fed. R. App. P. 24(a)(1)c.  If the plaintiff does**

  choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).

3.   The agency having custody of the Plaintiff is directed to remit the docketing fee of $350.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $350.00.

4.   The plaintiff is responsible for ensuring the $350.00 filing fee is paid to the clerk of the court even though his case has been dismissed.  Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.  The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.

5   The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.

Entered this 26th day of March, 2010.

           s\ Harold A. Baker
         _____
           HAROLD A. BAKER
         UNITED STATES DISTRICT JUDGE